IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| | : | |
| TIMOTHY P. WATSON | : | BANKRUPTCY NO.: 4-13-bk-00304-JJT |
| SUSAN K. WATSON, | : | |
| | : | |
| DEBTORS | : | |
| | : | |
| NORTH CENTRAL PENNSYLVANIA | : | {**Nature of Proceeding**: Complaint for |
| REGIONAL PLANNING AND | : | Violation of the Automatic Stay} |
| DEVELOPMENT COMMISSION, | : | |
| | : | |
| PLAINTIFF | : | |
| | : | |
| vs. | : | |
| | : | |
| JEROME ECKERT, | : | |
| | : | |
| DEFENDANT | : | **ADVERSARY NO.: 4-13-ap-00203-JJT** |

# OPINION

This matter comes before me under an unusual fact pattern that I will briefly set forth.

Most facts are not in dispute.

The Debtors, Timothy and Susan Watson, (hereinafter "Debtors"), own a parcel of

property in Potter County, Pennsylvania.  In 2009, judgment liens against the real estate were

filed by the Plaintiff, North Central Pennsylvania Regional Planning and Development

Commission, (hereinafter "Plaintiff").  On or about March 27, 2012, the Debtors entered into a

20 year lease and easement agreement with the Defendant, Jerome Eckert, (hereinafter

"Defendant").  Plaintiff Ex. 12.  Defendant operated a quarry nearby and planned to erect a pole

barn[1] on the premises for use in his quarry operation.  As security for Defendant's investment in

the building, the Debtors gave Defendant a mortgage to protect his interest.  Plaintiff Ex. 11.

---

[1]  A farm building with no foundation and with sides consisting of corrugated steel or aluminum panels supported by poles set in the ground typically at eight-foot intervals.  Oxford Dictionaries. Oxford University Press, n.d. Web. 18 August 2016.  <http://www.oxforddictionaries.com/definition/american_english/pole-barn>

Defendant erected the pole barn. On January 22, 2013, the Debtors filed a Chapter 13 bankruptcy. Plaintiff filed for relief to execute on the property. Prior to execution, however, Defendant, without seeking relief from the automatic stay, removed the pole barn and related items from the property. On August 14, 2013, Plaintiff filed this Complaint under 11 U.S.C. § 362(k) alleging that the automatic stay was violated by Defendant resulting in damages to Plaintiff's collateral.

The Debtors have not participated in this litigation and eventually had their Chapter 13 plan confirmed on August 13, 2015. The plan appears to strip Plaintiff from its lien on 367 Cherryspring Road, Coudersport, Pennsylvania, while surrendering to Plaintiff, 365 Cherryspring Road. The plan neither assumes nor rejects Defendant's lease.

Plaintiff argues that the referenced documents, together with Plaintiff's Exhibits 13 "Agreement" and 14 "Memorandum of Real Estate Lease and Easement Agreement," were actually a conditional sale and, alternatively, if those documents are deemed a lease, the pole barn was erected before the lease was put in place.

There are three significant issues that are critical in these proceedings.

First, does the Plaintiff, a creditor, have standing to litigate stay violations?

Second, is a removal of a pole barn constructed by a tenant on property of the Debtors, a violation of the stay?

Third, if such a violation did occur, what damage, if any, was the result?

The issue of standing of the Plaintiff, a creditor of the Debtors, to pursue damages for a violation of the stay by another creditor, has already been addressed by my Opinion denying a Motion to Dismiss the Complaint. *In re Watson*, 505 B.R. 634 (Bankr. M.D.Pa. 2014). I held that Plaintiff did, indeed, have standing.

This brings us to the issue of whether the automatic stay was violated by the removal of

the pole barn. It was this issue which was tried on August 18, 2015. The trial was bifurcated so that if liability was found, I would schedule a trial on damages at a later time. Doc. #67.

There is no dispute that Defendant erected this building on property leased from the Debtors for use in conjunction with a quarry Defendant owned on adjacent lands. In order to protect his interest in this structure, Defendant entered into four separate documents with the Debtors: a 20 year lease, an agreement, a memorandum recorded in Potter County records, and a mortgage, also recorded. As suggested by Plaintiff, there is evidence that the erection of the structure was substantially completed prior to the execution of the written documents. That evidence is in the form of a bill for labor dated March 2, 2012, (Plaintiff Ex. 33A), and a rent check that included rent for both February and March of 2012, (Plaintiff Ex. 15). There was every indication that such construction occurred pursuant to an oral agreement. Nevertheless, the gist of those documents subsequently entered into represent the clear understanding that, as between Debtors and Defendant, the pole barn represented personal property and not a fixture on the land. The question that must be answered is whether that building's removal during the bankruptcy by the tenant without securing relief from the automatic stay constituted a violation of the automatic stay provisions of § 362.

The parties have stipulated and agreed that Defendant caused the removal of the building on or about August 1, 2013. Doc. #72 at ¶ 7. The Real Estate Lease and Easement Agreement was dated March 27, 2012, and provided for a 20 year term. Plaintiff Ex.12. The lease provided that upon termination of the lease, Defendant would be permitted to remove the building. The Memorandum of Real Estate Lease and Easement Agreement permits removal of the pole barn at any time. Plaintiff Ex. 14.

Based on this record, the lease was still in place when the bankruptcy was filed in 2013 and remained in place, subject to rejection or assumption, until confirmation when it was deemed

rejected. 11 U.S.C. § 365(d)(2). Until it was rejected, the lease constituted property of the estate. *In re Biggs*, 271 Fed.Appx. 286, 288 (3rd Cir. 2008) (unpublished opinion). The pivotal question in this litigation is whether the bankruptcy estate had an interest in the pole barn. In simple terms, if this was personalty owned by the tenant, Defendant, then there is no violation due to its removal by the tenant. On the other hand, if this was a fixture attached to the real estate, then it likely would have been property of the estate, and its removal without securing court permission would have been a violation of § 362. My analysis of whether this pole barn is realty or personalty requires a review of Pennsylvania law since property interests are determined under state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

In *Clayton v. Lienhard*, 312 Pa. 433, 436-37, 167 A. 321, 322 (1933), the Pennsylvania Supreme Court set forth these relevant principles:

> Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty. . . . Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty-to them the ancient maxim 'Quicquid plantatur solo, solo cedit' [whatever is affixed to the soil belongs to the soil] applies in full force. . . . Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable. (Citations omitted)

I find that as between the Debtors and Defendant, the parties considered this pole barn personalty. This was clear by virtue of the agreements executed in conjunction with the lease and the barn construction. See Plaintiff Exhibits 11-14. While a factor in the ultimate resolution of this matter, the agreement of the parties is not controlling on the topic as made clear by *Clayton v. Lienhard*, 312 Pa. 433. Nevertheless, special considerations govern where there is a

landlord-tenant relationship. Trade fixtures are defined as "[r]emovable personal property that a tenant attaches to leased land for business purposes, such as a display counter. Despite its name, a trade fixture is not usu[ally]. treated as a fixture — that is, as irremovable." Black's Law Dictionary (10th ed. 2014). This is a well recognized concept in Pennsylvania jurisprudence.

> Such structures, placed by a tenant on demised premises for the purpose of carrying on his business, may be removed by him, or may be replevied or levied on by a writ of execution, during the term of the lease; being built on leased land and therefore on a chattel estate they are themselves chattels in regard not only to the lessor *but to every one else*. The criterion is not one of physical annexation, for the rule is the same even though the fixtures consist of steel-framework buildings, buildings with a brick, stone or concrete foundation, furnaces, machinery, casings of gas and oil wells, or similar structures. (Emphasis added)

*First Nat. Bank of McAdoo v. Reese,* 356 Pa. 175, 179, 51 A.2d 806, 808 (1947).

In such a situation, the tenant has a right to remove the property so long as it can be accomplished without material damage to the premises. "This limitation is based upon the presumption that the parties would not have intended for the fixture to be removed if removal would materially damage the remaining estate." 2 Tiffany Real Prop. § 617 (3d ed.). This right would continue until termination of the lease. *Berry v. Heinel Motors, Inc*., 162 Pa.Super. 52, 55 A.2d 374 (1948). These state law holdings are consistent with historic common law principles. *Nicholson v. Altona Corp*., 320 F.2d 8, 10 (3rd Cir. 1963).

My review of the documentation entered into between Debtors and Defendant satisfies me that the parties intended the pole barn to be a trade fixture removable by the tenant at will. The remaining question is whether such could be accomplished without material damage to the premises.

The testimony indicates that the pole barn was 100 feet by 40 feet and about 20 feet high. It had no plumbing or flooring. Its support poles were surrounded with a nominal amount of concrete which was set into the ground. Wooden segments were attached using screws for easy removal. There was no testimony of any significant damage to the real estate upon removal of

the pole barn.

Lastly, Plaintiff argues that a $70,000 secured proof of claim filed by Defendant on May 23, 2013, and supported by a mortgage signed by the Debtors, evidences Defendant's transfer of the pole barn to the Debtors, impeaching Defendant's argument that ownership of the pole barn remained with Defendant. The mortgage referenced was apparently security for ¶ 1 of the contemporaneous Agreement, (Plaintiff Ex. 13), which provided that "[i]n the event of breach of the Real Estate Lease and Easement Agreement by Obligors, or any other action or condition not otherwise caused by Obligee which materially interferes with Obligee's use of the property as bargained for under the Real Estate Lease and Easement Agreement, Obligors shall be obligated to purchase Obligee's storage building located on the property for the sum of $70,000.00 at the demand or election of Obligee." The record, however, contains no evidence that a breach of the lease occurred except as this Court may take judicial notice of the fact that confirmation of the Debtors' plan, in the absence of an assumption, constituted a breach. This was long after the pole barn was removed from the Debtors' property.

Based on these findings of fact and conclusions of law, I find that the pole barn was a trade fixture belonging to the Defendant and removable by the tenant without the necessity of seeking relief from the automatic stay.

My judgment will follow.

By the Court,

John J. Thomas, Bankruptcy Judge

(CMS)

Date: August 19, 2016